UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHELLY L. REESE,                              )          CASE NO. 5:11-CV-1257
                                              )
                    Plaintiff,                )
                                              )          JUDGE DONALD C. NUGENT
         v.                                   )
                                              )          MAGISTRATE JUDGE MCHARGH
COMMISSIONER OF SOCIAL                        )
SECURITY,                                     )          REPORT & RECOMMENDATION
                                              )
                    Defendant.                )

This case is before the undersigned pursuant to Local Rule 72.2(b).  The issue before the

undersigned is whether the final decision of the Commissioner of Social Security (the

"Commissioner") denying Plaintiff Shelly Reese's application for Supplemental Security Income

pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by

substantial evidence, and therefore, conclusive.

For the reasons set forth below the Court recommends that the decision of the

Commissioner be AFFIRMED.

I.  INTRODUCTION & PROCEDURAL HISTORY

On June 7, 2006, Plaintiff Shelly Reese ("Plaintiff" or "Reese") re-applied for

Supplemental Security Income benefits alleging that she became disabled on April 23, 2002, due

to suffering from fibromyalgia, osteoporosis, injuries to her tailbone and foot, asthma, gurd,

carpal tunnel syndrome and migraines.  (Tr. 89, 127-30, 145).  Reese had previously applied for

Supplemental Security Income benefits on June 16, 1999, but her application was ultimately

denied by an administrative law judge on April 22, 2002.  (*See* Tr. 71-84).  Reese's current

application was denied initially and upon reconsideration also.  (Tr. 89-90).  Thereafter, she

requested a hearing before an administrative law judge to contest the denial of her application.

(Tr. 98).  The Social Security Administration granted Plaintiff's request and scheduled a hearing. (Tr. 99-103).

On November 5, 2009, an Administrative Law Judge (the "ALJ") convened a hearing to evaluate Reese's application.  (Tr. 30-70).   Plaintiff appeared at the hearing with counsel and testified before the ALJ.  (*Id.*)  Medical expert, Dr. Herschel Goren (the "ME"), also testified at the proceeding.  (*Id.*)

On February 18, 2010, the ALJ issued his decision and determined that Reese was not disabled.  (Tr. 12-23).  Pursuant to the ruling in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), the ALJ adopted the findings of the previous ALJ and concluded that Plaintiff retained the ability to perform work which existed in significant numbers in the national economy.  (*Id.*)  Following this decision, Plaintiff sought review of the ALJ's decision from the Appeals Council.  (Tr. 7-8).  But, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-6).  Reese now seeks judicial review of the Commissioner's final decision denying her second application for benefits. Judicial review is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Reese, born on August 14, 1966, was forty-three years old on the date of her hearing before the ALJ.  (Tr. 31).  Thus, under the Social Security regulations, she was considered a "younger person" at all relevant times.  20 C.F.R. § 416.963(c).  Reese completed high school and attended some college courses.  (Tr. 32).  She has past experience working as an automobile mechanic, grocery store worker, deli clerk, bakery manager and legal secretary/receptionist.  (Tr. 21).

II.  ALJ's RULING

The ALJ made the following relevant findings of fact and conclusions of law.  To begin,

the ALJ noted that he was bound the ruling in *Drummond* because he did not find that Plaintiff's

condition had changed since the time her application had last been adjudicated.  (Tr. 12).  At step

one of the five-step sequential analysis,[1] the ALJ found that Reese had not engaged in substantial

gainful activity since the date she applied for benefits on June 7, 2006.  (Tr. 14).  At step two, the

ALJ ruled that Plaintiff continued to suffer from three severe impairments:  depression, lumbar

myofascial pain syndrome and a history of bilateral plantar fasciitis.  (*Id*.)  At the next step, the

ALJ determined that none of these impairments, individually or combined, met or equaled one of

the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 15-16).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential
analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).
The Sixth Circuit has summarized the five steps as follows:

(1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is
       not disabled.

(2)    If a claimant is not doing substantial gainful activity, her impairment must be
       severe before she can be found to be disabled.

(3)    If a claimant is not doing substantial gainful activity and is suffering from a
       severe impairment that has lasted or is expected to last for a continuous period of
       at least twelve months, and her impairment meets or equals a listed impairment,
       claimant is presumed disabled without further inquiry.

(4)    If a claimant's impairment does not prevent her from doing her past relevant
       work, she is not disabled.

(5)    Even if a claimant's impairment does prevent her from doing her past relevant
       work, if other work exists in the national economy that accommodates her
       residual functional capacity and vocational factors (age, education, skills, etc.),
       she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Based upon these findings, the ALJ found that Reese's residual functional capacity ("RFC") to work had not changed since the time her RFC had been assessed in 2002 by the prior ALJ.  He concluded that Reese still retained the ability to perform a range of medium work as it is defined in 20 C.F.R. § 416.967(c).  (Tr. 16).  Accordingly, at step four, the ALJ adopted the prior ALJ's finding that Plaintiff could not perform any of her former jobs.  (Tr. 21).  At the final step in the analysis, the ALJ adopted the previous ALJ's finding that Reese's RFC permitted her to perform unskilled work at the sedentary, light and medium exertional levels. (Tr. 22).

## III.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001)*; Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)*.*  Thus, if the record evidence is of such a nature that a reasonable mind might

4

accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)*.* This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V.  ANALYSIS

Plaintiff presented four issues for the Court's consideration in reviewing the ALJ's opinion. First, Plaintiff argued that it was improper for the ALJ to apply the ruling in *Drummond* in this case. Second, Reese questioned whether the ALJ erred by failing to incorporate more limitations into his RFC finding based upon her new and worsened symptoms. Next, Plaintiff attacked the validity ALJ's ruling because the ALJ failed to obtain a vocational expert to testify during her hearing. Finally, Reese claimed that the ALJ improperly rejected the opinions of her treating physicians. Each of these arguments is addressed below.

## A.  Treating Physicians

It is well-established that an ALJ must give special attention to the findings of a claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, referred to as the "treating source rule" recognizes that physicians who have a long-standing relationship with an individual are best-equipped to provide a complete picture of

the person's health and treatment history.  *Id*; 20 C.F.R. § 416.927(d)(2).  Opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Wilson*, 378 F.3d at 544.

When a treating source's opinion is not given controlling weight, the ALJ must consider several factors to determine what weight the opinion should be afforded.  These factors include: the length of the treatment relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an expert in the particular field of practice for which he/she is treating the claimant, and any other factor which may support or contradict the opinion.  20 C.F.R § 416.927(d)(2)-(7).  Moreover, the regulations require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions.  *Id*.

Reese contends that the ALJ erred by rejecting the opinions of two of her treating physicians, Dr. Glen Blankenhorn and Dr. Donald Kinsley.

### 1. Dr. Blankenhorn

Dr. Glen Blankenhorn has treated Plaintiff for a number of years.  His treatment of Plaintiff predates the prior ALJ's unfavorable decision.  Dr. Blankenhorn diagnosed Plaintiff with chronic myofascial pain, somatoform disorder, muscle contraction cephalgia and impingement syndrome in her left shoulder.  (Tr. 228, 403, 412, 414).  The ALJ acknowledged Dr. Blankenhorn's lengthy treatment of Reese, but noted that there was a lapse of treatment between 2004 and 2006.  (Tr. 18, 19).

Of particular relevance is a medical opinion form which Dr. Blankenhorn completed on December 29, 2006.  (Tr. 439-40).  In the report, Dr. Blankenhorn opined that the maximum weight Plaintiff could lift or carry was less than 10 pounds, regardless of whether she was required to do so on an occasional or frequent basis.  (Tr. 439).  Additionally, the doctor indicated that Reese's maximum ability to stand, walk or sit during a normal workday was limited to less than two hours.  (*Id*.)  According to Dr. Blankenhorn, Plaintiff could only sit for 30 minutes or stand for 10 minutes before needing to change positions.  (*Id*.)  With regard to environmental restrictions, he opined that Reese's work would need to avoid all concentrated exposure to extreme cold, heat and other hazards.  (Tr. 440).  Finally, he noted that her impairments would likely cause her to be absent from work approximately once a month.  (*Id.*)

The ALJ assigned "less than full weight" to Dr. Blankenhorn's opinion indicating that Reese was not capable of performing even sedentary work.[2]  Reese contends that the ALJ erroneously accepted the findings offered by the ME and state agency physician, Dr. Nick Albert – neither of whom ever treated Plaintiff – over Dr. Blankenhorn's findings.  Plaintiff suggests that Dr. Blankenhorn's lengthy treatment of her should have outweighed these doctor's opinions, and prompted the ALJ to credit his findings more than the other doctor's opinions.

The ALJ's decision to limit the weight attributed to Dr. Blankenhorn's decision is supported by substantial evidence.  Though opinions from a claimant's treating source are of particular relevance, such opinions are only entitled to controlling weight when certain

---

[2] Sedentary work involves tasks which require "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files ledgers, and small tools" and a substantial amount of sitting.   20 C.F.R. § 416.967(a).  Therefore, because Dr. Blankenhorn opined that Reese could not lift even 10 pounds or sit uninterrupted for periods longer than 30 minutes, he effectively precluded Plaintiff from performing sedentary work.

conditions are met. Here, the ALJ determined that Dr. Blankenhorn's findings were not entitled to complete deference because they were not supported by clinical or diagnostic findings to substantiate the very restrictive limitations he placed on Reese's ability to work. Instead, the ALJ concluded that Dr. Blankenhorn's opinions were largely based upon Plaintiff's "subjective report of symptoms and limitations". (Tr. 19). Because there were no medical findings to support Dr. Blankenhorn's opinions, the ALJ properly determined that they were not deserving of controlling weight under *Wilson*.

However, in her reply brief, Reese contends that it was not proper for the ALJ to consider the lack of clinical findings supporting Dr. Blankenhorn's opinion as a factor in assessing how much weight to afford his opinion. Reese noted that where a patient has been diagnosed with fibromyalgia, a condition similar to her diagnosis of myofascial pain, the absence of objective evidence is not relevant in evaluating a doctor's conclusions. *See Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 245 (6th Cir. 2007)* ("[I]n light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant."). Although Dr. Blankenhorn diagnosed Reese with myofascial pain syndrome, not fibromyalgia, Reese claims that the ALJ should not have permitted the lack of objective evidence in the record to negatively impact his view of Dr. Blankenhorn's findings.[3] Yet, Reese did not submit any case law to support her theory that the two ailments should be treated the same.

---

[3] The record reflects that Dr. Pellegrino diagnosed Reese with fibromyalgia. (Tr. 303). However, Plaintiff did not present the Court with evidence showing what steps Dr. Pellegrino took to diagnose her with this condition. But, the mere diagnosis of fibromyalgia does not render a claimant disabled. *Vance v. Comm'r of Soc. Sec., 260 F. App'x 801, 806 (6th Cir. 2008)*.

Some courts have treated myofascial pain syndrome similar to fibromyalgia, ruling that the condition could not be objectively verified, and therefore, could not be discounted based upon this account.  *See Matzke v. Barnhart*, No. 05-C-606-C, 2006 WL 6010911, at *7-8 (W.D.Wis. May 23, 2006); *see also Buehler v. Astrue*, No. 08-cv-732-bbc, 2009 WL 2495749, at *9 (W.D. Wis. Aug. 12, 2009).  However, even if this Court were to find that myofascial pain syndrome was entitled to the same scrutiny as applied in fibromyalgia cases, the Court is not convinced that the ALJ's conduct here was inappropriate because the ALJ did not discredit Dr. Blankenhorn solely based upon the lack of objective or clinical findings supporting the doctor's recommendations.

Here, the ALJ also noted that Dr. Blankenhorn's opinions were inconsistent with the evidence as a whole and with his own treatment notes.  This finding is supported by the ME's testimony and the opinion of state agency physician, Dr. Albert.  The ME indicated that Dr. Blankenhorn's finding that Reese was limited to less than sedentary work was inconsistent with the doctor's diagnosis of Reese.  After reviewing Plaintiff's medical record, the ME concluded that there were no exertional restrictions on Reese's ability to work.  Dr. Albert also concluded that Reese was capable of performing tasks at the medium exertional level.  These two medical opinions directly contradict Dr. Blankenhorn's assessment of Plaintiff's abilities.  The ALJ did not violate the holding in *Rogers* by rejecting Dr. Blankenhorn's opinions solely based upon a lack of objective evidence in the record.  Instead, he also found that Dr. Blankenhorn's opinion was inconsistent with the record as a whole.  The ALJ's reliance upon this factor was sufficient to justify his decision despite any arguable error he committed by noting that there was no objective evidence to support Dr. Blankenhorn's findings with regard to the limitations he placed on Plaintiff's physical ability to work.  *See Matzke*, 2006 WL 6010911, at *8 (finding that

although the ALJ discounted the plaintiff's credibility because there was no objective evidence to verify the symptoms from his myofascial pain, the ALJ's credibility finding was nonetheless sound because the ALJ relied upon other legitimate factors to discredit the plaintiff's testimony); *see also Buehler*, 2009 WL 2495749, at *9 (ruling that the ALJ's credibility finding did not solely rest on the lack of objective evidence confirming the plaintiff's myofascial pain, but was also based upon her course of treatment, daily activities and functional abilities).

After the ALJ determined that Dr. Blankenhorn's opinions were not entitled to controlling weight, it remained the ALJ's duty to determine how much weight to assign to the doctor's findings.  Though Reese strongly believes that Dr. Blankenhorn's extended treatment of Reese was sufficient to justify his opinion being given preference over the opinions of the ME and the state agency physician, the Social Security regulations prescribe that the length of the treatment relationship between the claimant and the doctor is but one of the many factors an ALJ should consider when deciding how much weight to give the treating source's opinion.  20 C.F.R. § 416.927(d).  Here, the ALJ was aware that Dr. Blankenhorn had treated Reese for a number of years.  However, the ALJ was also required to consider the other factors announced in 20 C.F.R. § 416.927(d)(2)-(7).

These factors included whether the doctor's opinion was consistent with the record as a whole, how well the doctor's opinions were supported, and any other evidence which may have supported or contradicted the opinion.  This ALJ noted that (1) there was a two-year gap in the doctor's treatment of Reese; (2) his opinions appeared to rely upon Reese's subjective statements, an observation first made by the ME; and (3) Dr. Blankenhorn's finding that Plaintiff could not perform sedentary tasks was inconsistent with the record as a whole.  For example, the state agency physician opined that Plaintiff retained the ability to perform medium level work.

Because no one factor has preeminence over the rest, the ALJ properly considered all of these factors in assessing Dr. Blankenhorn's opinion.  When viewed together, the sum of these factors support the ALJ's decision to give less than full weight to Dr. Blankenhorn's findings, despite his prolonged treatment relationship with Reese.

### 2.  Dr. Kinsley

Dr. Donald Kinsley began administering psychotherapy to Reese in May 2009.  (Tr. 442). On October 24, 2009, he drafted a letter evaluating Plaintiff's mental health.  (Tr. 442-43).  Dr. Kinsley remarked that he had been treating Plaintiff for anxiety, depression and other problems she experienced with "depletion of ego, self-concept and self-assuredness."  (Tr. 442).  He found that Reese was rational and reasonable, but that she had "very poorly integrated personality", "experience[d] high levels of generalized anxiety" and suffered from significant depression.  (Tr. 443).  Dr. Kinsley also noted that Reese faced many ongoing stressors in her daily life.  Based on these findings, he concluded that "[h]er physical health problems, cognitive dysfunction and emotional turmoil" made her unfit for any type of employment.  (*Id*.)  However, he noted that Plaintiff had the potential to work.  (*Id*.)

Reese maintains that the ALJ improperly rejected Dr. Kinsley's opinion that Plaintiff's mental impairments, including anxiety and preoccupation with danger and fear, rendered her unemployable.  The ALJ assigned "little weight" to Dr. Kinsley's findings.  (Tr. 19).  The ALJ ruled that the doctor's conclusion that Plaintiff was unemployable was not relevant because the ultimate question of employability was reserved only for the Commissioner.  With regard to the functional limitations Dr. Kinsley announced, the ALJ held that there were no treatment notes or clinical findings to substantiate Dr. Kinsley's findings.

11

During the hearing, Plaintiff suggested that there were treatment records to corroborate Dr. Kinsley's findings regarding Plaintiff's mental functional capacity.  The ALJ requested that Plaintiff submit these treatment records to him within two weeks after the date of the hearing. Reese concedes that she did not submit these records to the ALJ within this timeframe, leaving the ALJ to evaluate her claim without the benefit of these records.  These documents were not supplemented to the record until Plaintiff submitted them to the Appeals Council when she appealed the ALJ's decision.

In her initial brief, Plaintiff appeared to argue that the Court should consider these records even though they were not before the ALJ, because they are now part of the record.  But, it is well-established that the Court can only look to the evidence which was before the ALJ in deciding whether the ALJ's ruling was supported by substantial evidence.  *Bass v. McMahon, 499 F.3d 506, 512-13 (6th Cir. 2007)* ("Only evidence in the record below can be considered when determining whether or not the ALJ's opinion was supported by substantial evidence".).  In cases such as the present, where evidence is submitted to the Appeals Council, but not to the ALJ, it is not proper for the Court to order remand unless the claimant can show that the additional evidence is new and material, and that there was good cause for the claimant's failure to present the evidence to the ALJ.  *Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993)*.  Reese has not made any of these assertions.  Consequently, it is not proper to order remand for consideration of these records, and neither can the Court utilize such in reviewing the ALJ's decision.

The Court also rejects the arguments in Reese's reply brief rebutting the Commissioner's defense of the ALJ's treatment of Dr. Kinsley's opinions.  Reese appears to argue that while it may have been proper for the ALJ to disregard Dr. Kinsley's statement that she was

12

unemployable as an improper legal conclusion rather than a medical opinion, it was not appropriate for him to ignore Dr. Kinsley's opinions as to her mental functional capacity. However, the ALJ did not discount these findings because they were improper legal conclusions. The ALJ indicated that he did not fully credit these opinions because there were no treatment notes or test results to substantiate Dr. Kinsley's opinions, despite the fact that he afforded Plaintiff additional time in which to provide such.  Therefore, while Dr. Kinsley was the most recent doctor to opine on Reese's level of mental functioning, his opinions were not entitled to deference because there was no support for his conclusions.  As a consequence, the ALJ's decision to assign less weight to Dr. Kinsley's opinions is supported by the record.

### B.  ALJ's Application of *Drummond*

Prior final decisions of the Commissioner which were not appealed are binding.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232 (6th Cir. 1993).  Thus, "Social security claimants are bound by the principles of res judicata."  *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997).  In *Drummond*, the Sixth Circuit held that the Commissioner is bound by its prior findings with regard to a claimant's disability application unless new evidence or changed circumstances require a different finding.  *Id*. at 842; AR 98-4(6), 1998 WL 283902, at *2-3.  Social Security Acquiescence Ruling 98-4(6) therefore mandates that:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3.

It is the claimant's burden to present evidence showing that her symptoms have changed since the time of the Commissioner's prior determination obviating the application of the ruling in *Drummond*.  *Casey*, 987 F.2d at 1232-33.  "Plaintiff must not merely present new and material evidence, but that evidence must show that plaintiff's condition *deteriorated* from the state of her condition at the time the ALJ made the decision."  *Drogowski v. Comm'r of Soc. Sec.*, No. 10-12080, 2011 WL 4502988, at *8 (E.D.Mich. July 12, 2011) (emphasis in original) (*citing Casey, 987 F.2d at 1232-33*), *R&R adopted*, 2011 WL 4502955.  Thus, a prior ALJ's ruling that a claimant is capable of working is binding upon a subsequent ALJ unless the claimant can show that her symptoms have worsened since the time of the prior ALJ's decision.  The Ninth Circuit, which also uses this standard, refers to it as the "presumption of continuing non-disability".  *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

At the outset of the ALJ's opinion, he indicated that he was applying the ruling in *Drummond* to Reese's case.  The ALJ explained that the evidence which Reese submitted in support of her claim "d[id] not indicate that a more or less restrictive residual functional capacity [wa]s warranted than that which was previously found."  (Tr. 12).  Plaintiff argues that the ALJ should not have applied *Drummond* to her case because her condition had worsened since the last adjudication of her benefits in 2002.  Specifically, Reese notes that her asthma and mental health had significantly deteriorated and that she had developed problems with incontinence since the last time her request for benefits was denied.  Although Plaintiff argues that the worsening and/or existence of these conditions precluded the ALJ from applying *Drummond* to her case, substantial evidence supports the ALJ's finding that her overall condition was not substantially worse than it was in 2002 to prohibit the ALJ from adopting the findings of the prior ALJ.  "[W]hen a plaintiff previously has been adjudicated not disabled, she must show that

14

her condition *so worsened* in comparison to her earlier condition that she was unable to perform substantial gainful activity." *Casey, 987 F.2d at 1232-33* (emphasis added); *McCracken v. Comm'r of Soc. Sec.*, No. 1:08-CV-327, 2009 WL 2983049, at *10 (S.D.Ohio Sept. 14, 2009) ("new and material evidence must document a *significant* change in the claimant's condition") (emphasis in original).

### 1.  Asthma

Reese maintains that her asthma had become worse since the time her prior application was adjudicated.  She submits that tests now show that she suffers from a moderate impairment of air exchange, increased wheezing and interstitial markings of her lungs consistent with COPD changes, whereas in 2002, there was only one noted episode of wheezing and her air obstruction was considered mild.  Moreover, Plaintiff highlights that even the ME testified that he viewed her asthma as a severe impairment, and that she would need to avoid concentrated fumes.[4]

However, the record supports the ALJ's finding that Reese's asthma had not *substantially* worsened since 2002.  Though Plaintiff correctly identified a number of records which demonstrate that her asthma and its related symptoms had worsened since 2002, there is also an appreciable amount of evidence in the record to the contrary.  The ALJ noted that despite Plaintiff's refusal to quit smoking, pulmonary function testing from September 2008 and May 2009 showed that she only suffered from a mild pulmonary obstruction – consistent with the evidence presented to the prior ALJ. (*See* Tr. 80).  Though the Court acknowledges that Plaintiff's failure to quit smoking does not necessarily speak to whether her asthma had

---

[4] State agency physician, Dr. Rebecca Neiger, also indicated that Plaintiff would need to avoid concentrated exposure to fumes, odors and gases.  (Tr. 286).  However, Plaintiff's treating physician, Dr. Blankenhorn, did not find that Plaintiff would need to avoid these types of environments.  (Tr. 440).

progressed since 2002, it is relevant to whether Plaintiff's asthma and accompanying symptoms placed more than a minimal limitation on her ability to work.  In fact, in January 2005 her doctor noted that "[d]iscontinuing smoking is the single best thing [Reese] can do for herself and her unborn baby."  (Tr. 334).  Regardless, of this issue, there is support in the record for the ALJ's conclusion that Plaintiff's asthma had not significantly worsened.  The fact that there is evidence in the record which also supports the opposite conclusion is inapposite.  *Mullen*, 800 F.2d at 545. Accordingly, the record does not establish that Plaintiff's asthma deteriorated to a point where there was a considerable difference between her level of impairment in 2002 and when the ALJ rendered his decision in 2010.

Though the ME's testimony indicating that Reese's asthma was a severe impairment would appear to bolster Plaintiff's argument, the ALJ rejected the ME's testimony.  The ALJ explained that the ME's finding was inconsistent with other evidence in the record – namely the pulmonary function test results from May 2009 which reflected findings similar to those at issue in 2002.  Therefore, the ALJ indicated that he did not fully credit the ME's findings and did not incorporate the environmental restrictions the ME recommended for Plaintiff.

It is worth noting that the previous ALJ who evaluated Plaintiff's claim also declined to rule Plaintiff's asthma to be a severe impairment despite his knowledge of Plaintiff's history with asthma.  The record before the first ALJ included an opinion from a consultative examiner who recommended that Reese's work avoid exposure to dust and fumes due to her pulmonary complications.  Notwithstanding this evidence, the previous ALJ did not conclude that Plaintiff's asthma constituted as a severe impairment; neither did the ALJ incorporate the consultative examiner's environmental restrictions into his RFC assessment.

In the instant case, the ME's testimony is akin to the consultative examiner's opinion before the previous ALJ.  Just as the consultative examiner who evaluated Plaintiff for her initial application, the ME here opined that Plaintiff's asthma was severe and that her pulmonary problems would place restrictions on the types of work environments in which she could function.  Essentially, both the consultative examiner below and the ME herein agreed that Reese's work environment would need to be free of dust and fumes.  However, the prior ALJ did not find Plaintiff's asthma to be severe, nor did he incorporate this environmental restriction into his RFC assessment.    Thus, the ALJ's failure to incorporate these environmental limitations into his RFC was harmless because the prior ALJ had already acknowledged them in his opinion.  The ME's recommendation here was no more than what the consultative examiner had recommended to the prior ALJ.

## 2. Mental Impairment

Neither is the Court persuaded that Plaintiff's mental condition has changed since the time of the prior ALJ's ruling.  The sole evidence upon which Reese relies in arguing that her mental state worsened are the findings offered by Dr. Kinsley.  But, as previously addressed, the ALJ properly assigned little weight to Dr. Kinsley's opinions because there were no treatment notes or test results to support his findings.  Consequently, Dr. Kinsley's notations are insufficient to undermine the ALJ's ruling.

## 3. Urinary Incontinence

Finally, Reese posits that the ALJ failed to acknowledge a new problem from which she suffers.  Reese submits that since the time of the prior ALJ's ruling, she has battled problems with urinary incontinence.  At the hearing, Plaintiff claimed that she needed to relieve herself at least once an hour, and that this medical condition would limit her ability to work.  However,

17

Reese did not present any objective evidence to prove that she would need to use the restroom at this frequency.  The treatment note from Dr. Vincent Perkowski upon which Plaintiff relies merely reflects Reese's subjective complaint to Dr. Perkowski about of problems with holding her urine.  (Tr. 363).  After noting this problem, the doctor recommended that Reese consult with an urologist regarding her incontinence.  (Tr. 364).  Yet, Plaintiff has not shown where the record reflects that she ever met with the urologist, or where any doctor confirmed that she would need to urinate at least once per day.

During the hearing Reese claimed that she was taking the medication, Ditripan, to treat this condition.  Although the ME confirmed that Ditripan was a medication used to reduce urinary frequency, the ME specifically noted that it was not one of the twenty medications which he had confirmed being prescribed for Plaintiff.  (*Compare* Tr. 57-58 *with* Tr. 65).  In other words, the only evidence supporting the notion that Reese was prescribed this medication was Reese's own testimony during the hearing.  Therefore, based on the lack of objective evidence corroborating Plaintiff's claimed need to frequently urinate, it was reasonable for the ALJ to refrain from labeling this condition as a severe impairment.

In his discussion of Reese's severe impairments, the ALJ acknowledged Dr. Perkowski's notes referencing Reese's complaints of urinary incontinence.  While the Court agrees that the ALJ failed to offer any explanation as to why he failed to constitute this ailment as a severe impairment, the failure was harmless, particularly in light of the lack of objective evidence supporting Plaintiff's claims about the impact this impairment placed on her ability to work.  Notably, an ALJ is not required to recite every piece of evidence in the record, "so long as [the ALJ] consider[s] the evidence as a whole and reach[es] a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) (*citing Kornecky v. Comm'r of Soc.*

*Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006)).  Moreover, even if the ALJ did err by failing to label this condition as a severe impairment, this failure does not warrant remand because the ALJ found Reese to suffer from at least one severe impairment and continued to evaluate Plaintiff's claim through the subsequent steps of the sequential analysis.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Because the Court finds that the ALJ's ruling that Plaintiff's condition had not significantly worsened since 2002 is supported by the record, the ALJ's application of the ruling in *Drummond* was proper.  Finding so, the ALJ was not compelled to incorporate any additional limitations into his RFC assessment.  Accordingly, the ALJ ruled that Plaintiff retained the same RFC as that found by the prior ALJ.

### C.  Need for Vocational Expert

In her list of legal issues presented to the Court, Reese indicated that the ALJ's failure to seek vocational expert testimony was erroneous because such testimony was needed in order to ascertain whether Plaintiff's non-exertional impairments reduced the number of jobs available to her.  Although Plaintiff presented this issue on the initial page of her brief, she failed to develop any arguments in support of this contention.  Therefore, the argument is deemed waived.  *Maple v. Apfel*, 14 F. App'x 525, 537 (6th Cir. 2001); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").  Because the prior ALJ had already determined that an individual with Reese's RFC would be capable of performing an array of jobs existing in the economy, it was unnecessary for the instant ALJ to readjudicate this issue pursuant to *Drummond*.

19

VIII.  <u>DECISION</u>

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  <u>June 5, 2012</u>.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of the mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn, 474 U.S. 140 (1985)*; *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).